UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSA LEE KLANESKI,<br>　　　Plaintiff<br><br>v.<br><br>BRISTOL HOSPITAL, INC.,<br>　　　Defendant | :<br>:<br>:<br>:　Civil No. 3:22-cv-01158-VAB<br>:<br>:<br>:<br>:　JANUARY 3, 2023<br>: |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S</u>**
**<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

**I.    INTRODUCTION**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant, Bristol Hospital, Inc. ("Bristol Hospital" or the "Hospital"), respectfully submits this memorandum of law in support of its motion to dismiss all claims asserted against it in the Complaint filed in this case (Dkt. # 1) ("Complaint") by Plaintiff, Rose Lee Klaneski ("Plaintiff"). The Complaint sets forth four claims against Defendant, which are as follows: (1) discrimination based on gender identity or expression in violation of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116 (Claim I); (2) discrimination based on sex in violation of the ACA, 42 U.S.C. § 18116 (Claim II); (3) violation of the Federal Trade Commission Consumer Protection Law, 15 U.S.C. § 45(a)(1) (Claim III);[1] and (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq* (Claim IV).

Plaintiff's claims in Claims I and II must be dismissed because Plaintiff fails to state a plausible claim of discrimination under the ACA and cannot recover non-economic damages under that statute. Plaintiff's Claim III under the FTCA must be dismissed because that

---

[1] This statute is also known as the Federal Trade Commission Act and will be referred to herein as the "FTCA."

statute vests all authority to bring claims with the Fair Trade Commission ("FTC"), and provides no private right of action for individuals to sue for violation of the statute. Finally, Plaintiff's Claim IV under CUTPA must be dismissed because the Complaint, on its face, demonstrates that Plaintiff failed to commence this action within the applicable statute of limitations. Accordingly, Plaintiff has failed to set forth claims upon which relief can be granted as a matter of law with respect to all claims asserted in this action, and the Complaint should be dismissed in its entirety.

## II. FACTUAL BACKGROUND[2]

This action arises out of treatment that Plaintiff received as a patient at Bristol Hospital in June 2019. (Complaint, ¶ 1). Defendant Bristol Hospital is a domestic, non-stock corporation organized under the laws of the State of Connecticut. (Complaint, ¶ 2). Plaintiff is a transgender woman who was brought to Bristol Hospital on or about June 10, 2019 and discharged on June 12, 2019. (Complaint, § C; Complaint, ¶ 4).

In support of her claims, Plaintiff claims that after she was checked in to the emergency department at Bristol Hospital on June 10, 2019, she was unlawfully withheld medically necessary hormone called progesterone following her request that it be provided. (Complaint, § C).[3] Plaintiff also alleges that while she was a Plaintiff at Bristol Hospital, she was discriminated against on the basis of her gender identity or expression in that she was provided with a "different level of care than similarly-situated cisgender individuals," in violation of the ACA. (Complaint, §§ 5-9). Plaintiff further alleges that the fact that Bristol Hospital did not stock

---

[2] In reciting facts set forth in Plaintiff's Complaint, Defendant does not concede the facts or legal conclusions as alleged in the Complaint, but rather accepts the non-conclusory, factual allegations for the purposes of this Motion only. Defendant expressly reserves its rights to dispute the facts alleged in the Complaint.
[3] Notably, Plaintiff does not allege that she was not provided the hormones in question for the duration of her stay or that the Hospital refused to provide her with progesterone as a general matter. Rather, Plaintiff claims that progesterone only that they were not available to be administered upon her request while she was being treated in the emergency department and that the Hospital did not administer medication brought to the Hospital by her parents (which had not yet been verified by the Hospital). (*See* Complaint, § C; Complaint, ¶ 5).

progesterone in its pharmacy—as opposed to being able to order and obtain it from another pharmacy when needed—constitutes facial discrimination on the basis of sex under the ACA. (Complaint, ¶¶ 10-13).[4] Plaintiff alleges that the Hospital's treatment caused her damages in that Plaintiff "suffered pain, embarrassment, anguish, and loss of enjoyment of life's activities." (Complaint, ¶ 6). Plaintiff claims that the Hospital's conduct during her stay at the Hospital constituted an "unfair or deceptive practice" under the FTCA and an unfair trade practice under CUTPA. (Complaint, §§ 14, 17).

Plaintiff filed this action on or about September 14, 2022. Plaintiff was issued a Summons for service upon Defendant by the Court on or about December 6, 2022. (Dkt. # 7). Plaintiff served the Summons on Defendant on December 13, 2022. (Dkt. # 8). As relief, Plaintiff seeks compensatory damages for "mental pain, embarrassment, humiliation, emotional pain and anguish, denial of personhood, and loss of enjoyment of life," as well as punitive damages and pre- and post-judgment interest. (Complaint, § E).

## III. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *See Williams v. City of New York*, Civ. No. 03 Civ. 5342, 2005 U.S. Dist. LEXIS 26143, at *4-5 (S.D.N.Y. Nov. 1, 2005) (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, legal conclusions "must be supported by factual allegations." *Id.* at 679.

---

[4] Again, Plaintiff does not allege that Bristol Hospital did not ultimately make available or provide her with progesterone, only that it was not readily stocked in their on-site pharmacy.

Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 697 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. "[A] plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Id.* at 557. Thus, unless a plaintiff's well-pleaded allegations have "nudged [her] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 556 U.S. at 680.

In evaluating a motion to dismiss, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the [remaining] 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Rule 8(a)(2) requires that a plaintiff plead facts that allow the court to infer more than the mere possibility that the alleged misconduct occurred. *See Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management Inc.*, 712 F.3d 718 (2d Cir. 2013) ("the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the "tenet that a court must accept

4

as true all of the allegations contained in a complaint" does not apply to legal conclusions. *Logan v. Sectek*, 632 F. Supp. 2d 179, 182 (D. Conn. 2009) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint sets forth a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . ." *Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management Inc.*, 712 F.3d at 718 (quoting *Iqbal*, 556 U.S. at 679); *Logan*, 632 F. Supp. 2d at 182 (same).

## IV. ARGUMENT

Plaintiff's Complaint in this case sets forth four claims against Defendant. For the reasons articulated herein, each claim should be dismissed for failure to state a claim upon which relief can be granted.

### A. **Plaintiff's Claims Under the Affordable Care Act Must Be Dismissed Because Her Allegations Do Not Set Forth a Plausible Claim for Relief and the ACA Does Not Permit the Relief Sought by Plaintiff.**

In Counts I and II of the Complaint, Plaintiff asserts claims of discrimination on the basis of gender identity or expression (Count I) and sex (Count II). Plaintiff's claims should be dismissed because the ACA does not permit the relief Plaintiff seeks by way of this action. Additionally, the allegations of Plaintiff's ACA claims fail to state a plausible claim for relief under ACA because Defendant lacked notice during the relevant time period that its alleged conduct might violate the non-discrimination provisions of Title IX, as incorporated by the ACA.

#### 1. **Plaintiff's Allegations Do Not State Plausible Claim for Relief Under the ACA.**

Plaintiff's claims of discrimination under the ACA must fail because Defendant lacked requisite notice that alleged discrimination predicated on gender identity or expression violated the ACA during the relevant timeframe.

5

In Count I, Plaintiff asserts a claims under the ACA of discrimination on the basis of gender identity or expression in connection with her alleged treatment while a patient at Bristol Hospital in June 2019,[5] and in Count II asserts a claim that the Hospital's not stocking progesterone in its pharmacy constituted discrimination based on sex.

Congress has enacted four foundational statutes that prohibit recipients of federal monies from discriminating based on protected status. These statutes were enumerated and described succinctly in the United States Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), which is controlling as to the matters before the Court on this motion. In that case, the Supreme Court described the four statutes proscribing discrimination by recipients of federal financial assistance as follows:

> Title VI of the Civil Rights Act of 1964 forbids race, color, and national origin discrimination in federally funded programs or activities. 78 Stat. 252, 42 U. S. C. §2000d. Title IX of the Education Amendments of 1972 similarly prohibits sex-based discrimination, 86 Stat. 373, 20 U. S. C. §1681, while the Rehabilitation Act bars funding recipients from discriminating because of disability. 29 U. S. C. §794. Finally, the Affordable Care Act outlaws discrimination on any of the preceding grounds, in addition to age, by healthcare entities receiving federal funds. 42 U. S. C. §18116.

*Cummings*, 142 S. Ct. at 1569.

The four statutes above, along with the ACA, derive their authority from Congress's constitutional authority under the Spending Clause of the United States Constitution. *Id*. "Just as a valid contract requires offer and acceptance of its terms, the legitimacy of Congress' power to legislate under the Federal Constitution's spending clause (Art I, 8, cl 1) rests on whether

---

[5] Notably, Title IX—and by extension, the ACA—prohibit discrimination on the basis of "sex," and do not specifically mention gender identity or expression. Presumably, Plaintiff would rely upon the 2020 decision of the United States Supreme Court in *Bostock v. Clayton County*, where it was held in the Title VII employment context that discrimination on the basis of transgender status is necessarily discrimination on the basis of "sex." *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1743 (2020) ("For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex.")

6

the recipient of federal funding under such legislation voluntarily and knowingly accepts the terms of the contract; accordingly, if Congress intends to impose a condition on the grant of federal money, it must do so unambiguously." *Barnes v. Gorman*, 536 U.S. 181, 186 (2002); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (". . . legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions"). Crucially, for a recipient of federal funds to be liable in an action based upon the aforementioned Spending Clause statutes, it must have been clear at the time of the conduct forming the basis of liability that such conduct was a violation of the relevant statutory provision. *See Pennhurst*, *supra*, 451 U.S. 1 at 17 ("There can, of course, be no knowing acceptance if a [recipient] is unaware of the conditions or is unable to ascertain what is expected of it"); *Barnes*, *supra*, 536 U.S. at 186-87 (". . . we have regularly applied the contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages. Thus, a recipient may be held liable to third-party beneficiaries for intentional conduct that violates the clear terms of the relevant statute").

Here, both Counts I and II must fail because, at the time of the conduct at issue (June 2019), the Hospital would not have been on unambiguous notice that not stocking a particular hormone, progesterone, in its pharmacy—as opposed to obtaining it from alternative sources when it is needed—could constitute discrimination on the basis of gender identity or expression.[6] Moreover, and importantly, Plaintiff has *not* alleged that she did not actually receive progesterone

---

[6] Plaintiff alleges that the Hospital's stocking of testosterone, but not progesterone, in its pharmacy amounts to per se discrimination based on sex. Setting aside factual disputes as to whether each of these hormones raised by Plaintiff may have medical uses in treating both women and men, whether to stock a certain drug or hormone is a regularly revisited business decision reflective of the needs of the Hospital's patient population. Referring to one hormone as though it is exclusively female and the other as exclusively male is overly simplistic and should not be viewed as providing a plausible basis for a claim of discrimination under the ACA. Indeed, progesterone and testosterone are simply not equivalent as to applicable medical uses or the legal obstacles that might limit access when such a hormone is needed for treatment if it is not readily available. Furthermore, unlike progesterone, testosterone is classified as a Schedule III controlled substance. *See* 21 U.S.C. § 802(41); 21 C.F.R. § 1308.13(f).

7

during her treatment at the Hospital—only that it was not provided upon demand while she was in the emergency room on or about June 10, 2019, and that the Hospital did not immediately administer a prescription brought from home by her parents. (Complaint, § C; Complaint, ¶ 5). Without more, Plaintiff cannot plausibly state a claim that her treatment at Bristol Hospital on or about June 10, 2019 was discriminatory based on gender identity or expression.[7] Plaintiff's bare, conclusory assertion of differential treatment on the basis of gender identity or expression should not be viewed as sufficient to state a plausible claim of discrimination in violation of the ACA. Accordingly, the Court should dismiss Counts I and II for failure to state a claim upon which relief can be granted.

### 2. Plaintiff's ACA Claims Should Be Dismissed Because the ACA Does Not Permit the Relief Sought by Plaintiff.

Even if Plaintiff has set forth a plausible claim of discrimination—which she has not—Plaintiff's claims under the non-discrimination provisions of the ACA should nonetheless be dismissed because the statute does not afford the relief sought by Plaintiff in this action.

Where, as here, a cause of action is predicated upon prohibitions attached to an entity's receipt of federal monies, the remedies available are limited to those set forth in the relevant legislation itself, or which are otherwise ordinarily recoverable for breach of contract. *Cummings,* 142 S. Ct. at 1574. Title IX is a statute which contains no express remedies under these circumstances, but rather provides an implied right of action. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-96 (1979) ("Neither [Title IX nor Title VI] expressly mentions a private remedy for the person excluded from participation in a federally funded program."); *see also Barnes v.*

---

[7] Here, Plaintiff essentially asks the Court to insert itself into decisions about the timing of the administration of medications for an individual who has been admitted to a hospital emergency department, an area where the Court should be hesitant to tread. *See, e.g., Lewis v. Cain*, 2021 U.S. Dist. LEXIS 63293, at *149 (M.D. La. Mar 31, 2021) (noting in context of claim under the ADA that "it is not the role of the Court to second-guess the medical decisions and treatment protocols determined by medical staff").

8

*Gorman*, 536 U.S. 181, ("Like Title IX, Title VI mentions no remedies"). In turn, Title IX's remedies are incorporated by reference into the ACA, 42 U.S.C. § 18116(a), as follows:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

Thus, damages available for sex-based discrimination under the ACA are limited to those ordinarily recoverable for breach of contract. *See Cummings*, 142 S. Ct. at 1574 ("*Barnes* authorized the recovery of 'remedies traditionally available in suits for breach of contract' under Spending Clause statutes, like those we consider here, that 'mention no remedies'").

Here, Plaintiff's claims for relief solely seek emotional distress-related damages (i.e., mental anguish, pain and suffering, denial of personhood), punitive damages, and pre- and post-judgment interest predicated on those damages. (Complaint § E). Plaintiff's claims under the ACA in Counts I and II must be dismissed because that relief cannot be granted by the Court.

As to punitive damages, the Supreme Court's decision in *Barnes v. Gorman* expressly held that punitive damages were not recoverable in discrimination claims under Title VI against recipients of federal funds under Congress's Spending Clause powers. As noted, Title IX, from which the ACA derives its sex-based discrimination prohibitions, has been recognized to have been patterned on and provide the same remedies in an implied right of action as Title VI. *See Cannon*, 441 U.S. at 694-96 ("Title IX was patterned after Title VI of the Civil Rights Act of

9

1964"). Accordingly, the punitive damages sought by Plaintiff are not available in a discrimination action under the ACA, and her claims for the same must be dismissed.

Applying the same analysis as *Barnes*, the United States Supreme Court in *Cummings* expressly held in the context of a discrimination claim under the ACA that the emotional distress-type damages sought by Plaintiff here are not recoverable. *See Cummings*, 142 S. Ct. at 1567 (". . . we hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here"). Therefore, Plaintiff's claims for emotional distress damages under the ACA must be dismissed.

The only other claim for relief by Plaintiff in this action is pre- and post-judgment interest. That claim is necessarily predicated on her being entitled to the alleged emotional distress and punitive damages sought in this case, which, for the reasons articulated above, are unavailable under the ACA. As such, Plaintiff has failed to state a claim upon which relief can be granted, and Counts I and II should be dismissed.

### B. Plaintiff's Claim Under the Federal Trade Commission Act Must Be Dismissed Because the Statute Does not Provide a Private Right of Action.

In Count III of Plaintiffs' Complaint, Plaintiff asserts that the Hospital's actions constituted an unfair or deceptive trade practice in violation of the FTCA, 15 U.S.C. § 45(a)(1). Count III must be dismissed because the FTCA vests sole authority to enforce the Act with the Federal Trade Commission and does not provide plaintiffs with a private right of action.

In *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232 (2d Cir. 1974), the Second Circuit expressly recognized that the FTCA does not provide a private cause of action. In reaching this decision, the Court held, in relevant part:

> Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), prohibits unfair methods of competition in commerce.. . . the provisions of the Federal Trade Commission Act may be enforced only by the Federal

> Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions.

*Id.* at 237 (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1925); *Holloway v. Bristol Myers Corp.*, 158 U.S. App. D.C. 207 (D.C. Cir. 1973).

Subsequent decisions by the Second Circuit Court of Appeals have reinforced that the FTCA does not provide private parties with a cause of action for violation of the statute. *See Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 561 (2d Cir. 1978) ("The Court below did not advert to the suggestion in the removal petition that counts one and two might be thought to state claims under Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), and it is clear that no private right of action arises under that Act."); *Charych v. Siriusware, Inc.*, 790 Fed. Appx. 299, 301 (2d Cir. 2019) ("The Complaint also references the Federal Trade Commission Act ('FTCA') . . . The district court properly declined to address these claims. There is no private right of action under the FTCA . . ."); *Scott v. AOL Time Warner*, 109 Fed. Appx. 480, 481 (2d Cir. 2004) ("Plaintiffs also cannot assert claims under the Federal Trade Commission Act, 15 U.S.C. § 41-58, or the Wheeler-Lea Act, 52 Stat. 411, 15 U.S.C. §§ 41-56, which amended the Federal Trade Commission Act . . . because those statutes do not provide for a private cause of action.")

Since *Alfred Dunhill*, District Courts within this Circuit have regularly noted that claims that purport to bring a private cause of action under the FTCA are not permissible, whether such action is brought by competitors or consumers. *See Hagwood-El v. Allied Interstate, Inc.*, 2020 U.S. Dist. LEXIS 162676, at *12-13 (D. Conn. Sep. 4, 2020) ("As defendants have noted, . . . the Federal Trade Commission Act does not supply a private right of action.. . . Accordingly, I will dismiss [the plaintiff's] FTCA claim.") (internal citations omitted); *Richards v. Docket Alarm*, 2021 U.S. Dist. LEXIS 234027, at *7 (E.D.N.Y. Dec. 7, 2021) ("[T]he Federal Trade Commission

Act prohibits unfair or deceptive acts or practices affecting commerce, but its provisions are enforced by the Federal Trade Commission, not by private lawsuits."); *Ghiazza v. Anchorage Marina, Inc.*, 2021 U.S. Dist. LEXIS 183351, at *12 (S.D.N.Y. Sep. 24, 2021) ("Although it is unclear whether Plaintiff actually seeks to assert a claim under the FTCA, [] Defendants correctly point out that there is no private right of action under this statute.") (*citing Alfred Dunhill* and *Naylor*, *supra*); *Smith v. MBI, Inc.*, 2019 U.S. Dist. LEXIS 87445, at *3-4 (D. Conn. Feb. 8, 2019) ("It is well settled that there is no private right of action under the FTC Act[.]") (quoting *Loussides v. Am. Online, Inc.*, 175 F. Supp. 2d 211, 214 (D. Conn. 2001)).

Here, Plaintiff improperly seeks to bring a private cause of action under the FTCA, which is clearly precluded by binding Second Circuit precedent that has been consistently reinforced by the decisions of the District Courts within this Circuit. Accordingly, Plaintiff's claim under the FTCA must be dismissed.

    **C.**    **Plaintiff's Claim Under CUTPA Must Be Dismissed Because it is Facially Untimely.**

Plaintiff's claim under CUTPA must be dismissed as untimely because the claim was commenced after the expiration of the applicable statute of limitations.

A statute of limitations defense may be raised by a Defendant by motion under Fed. R. Civ. P. 12(b)(6), and such a motion "is well-grounded if it appears on the face of the complaint that the cause of action has not been brought within the statute of limitation." *Santos v. Dist. Council of New York City*, 619 F.2d 963, 967, n. 4 (2d Cir. 1980); *see also Wong v. State Dep't of Educ.*, 2018 U.S. Dist. LEXIS 10280, at *18 (D. Conn. Jan. 22, 2018) ("[W]here the complaint *facially* shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading a party may invoke a statute of limitations defense in an 12(b)(6) motion") (emphasis in original; internal quotation marks omitted); *Lindow v. Bd. of Educ.*,

2005 U.S. Dist. LEXIS 50739, at *4, n.2 (N.D.N.Y July 26, 2005) (quoting *Santos*). Under CUTPA, claims must be brought within three (3) years of the occurrence of the alleged violation of the statute. *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter").

Here, the underlying conduct upon which Plaintiff bases her claim in this case took place from on or about June 10, 2019 to June 12, 2019. (Complaint, ¶¶ 1, 4-6). Thus, Plaintiff was required to bring her action under CUTPA on or before June 12, 2022. Conn. Gen. Stat. § 42-110g(f). Where, as here, a Court exercises supplemental jurisdiction over a state law claim, state law determines when an action has been commenced in assessing whether an action is timely under the applicable statute of limitations. *See Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 24 (D. Conn. 2011) ("As the Court is exercising supplemental jurisdiction over Plaintiff's CFEPA claims, state law applies for purposes of determining when an action is commenced.") (citing *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 191) ("In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim.")); *see also Kotec v. Japanese Educ. Institute of N.Y.*, 321 F. Supp. 2d 428, 431 (D. Conn. 2004) (recognizing that a federal court exercising supplemental jurisdiction "looks to state law, and not the federal rules, for purposes of determining when a plaintiff commences an action."). Thus, the date upon which Plaintiff's CUTPA action was commenced is governed by Connecticut law.

In this case, Defendant was served with the Summons and Complaint on December 13, 2022, more than five months after the expiration of CUTPA's statute of limitations. "In Connecticut, an action is commenced on the date of service of the writ upon the defendant." *Hillman v. Town of Greenwich*, 217 Conn. 520, 527-28 (1991) (quoting *McGaffin v. Roberts*, 193

13

Conn. 393, 401-02 (1984)).[8] Thus, Plaintiff's CUTPA claim was not commenced until December 13, 2022, long after the expiration of the applicable statute of limitation. Plaintiff's CUTPA claim is therefore facially untimely and thus fails to state a claim upon which relief can be granted.[9] Accordingly, Claim IV of the Complaint must be dismissed.

V.     CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief can be granted in this action, and the Complaint should be dismissed in its entirety.

Respectfully submitted,

DEFENDANT,
Bristol Hospital, Inc.


By:     /s/ *Justin E. Theriault*
        Justin E. Theriault (ct 28568)
        justin.theriault@jacksonlewis.com
        Jackson Lewis P.C.
        90 State House Square, 8th Floor
        Hartford, CT 06103
        P: (860) 522-0404
        F: (860) 247-1330

---

[8] Varying statutes and court decisions in Connecticut will use the terms "brought," "commenced," or both with respect to considering the date an action is formally initiated by a party in assessing timeliness under applicable statutes of limitation. Importantly, however, in Connecticut, the terms "brought" and "commenced" are used interchangeably in this context. *See Chestnut Point Realty, LLC v. Town of E. Windsor*, 324 Conn. 528, 540-41 (2017) ("As this court previously has explained, there is no substantive distinction between the terms 'bringing' an action and 'commencing' an action.") (Internal quotation marks omitted).

[9] Moreover, even if the Court were to ignore Connecticut law concerning the date an action is commenced and consider the September 14, 2022 filing date of this action as the date Plaintiff's CUTPA claim was "brought," Plaintiff's CUTPA claim would still be untimely and thus subject to dismissal.

**CERTIFICATION OF SERVICE**

      I hereby certify that on January 3, 2023 a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. A copy of this filing has been sent by first class mail, postage prepaid to:

      Rosa Lee Klaneski
      8 Farmington Meadow Drive
      Farmington, CT 06032-2040

      */s/ Justin E. Theriault*
      Justin E. Theriault