IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Rosa Lee Klaneski | ) | **OBJECTION TO MOTION** |
| Plaintiff | ) | **TO DISMISS** |
| | ) | |
| V. | ) | |
| | ) | Case No.: 3:22-CV-01158-VAB |
| Bristol Hospital, Inc. | ) | |
| Defendant | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

The Plaintiff Rosa Lee Klaneski hereby objects to the Defendant's Motion to Dismiss and submits the following responsive pleading. The Plaintiff objects to the Defendant's Motion to Dismiss and imputes standing from the Supreme Court's interpretation of Title IX based claims that an implied right to personal actions under the Affordable Care Act exists. The Plaintiff propounds that she has properly pleaded a fact pattern that demonstrates bias on the basis of gonadal sex with a specific implicit bias against transgender females, and requests leave to amend her complaint to change her request for relief to include nominal damages and injunctive relief

from the Court to correct the discriminatory practices of the Defendant.

The Defendant claims in its motion to dismiss that the Plaintiff lacks standing to litigate this complaint because such relief is unavailable to similarly damaged litigants. The Plaintiff propounds that she has an implied right of action under the Affordable Care Act, which the Defendant agrees has a basis in interpretation consistent with Title IX (20 U.S.C. § 1681). "None of these statutes expressly provides victims of discrimination a private right of action to sue the funding recipient in federal court. But as to both Title VI and Title IX, our decision in *Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979), 'found an *implied* right of action.'" *Barnes v. Gorman*, 536 U.S. 181, 185, 2002. Congress later "acknowledged this right in amendments" to both statutes, *ibid.*, leading us to conclude that it had "ratified *Cannon*'s holding" that "private individuals may sue to enforce" both statutes. *Alexander v. Sandoval*, 532 U.S. 275, 280, (2001); see also *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 72-73, (1992). Based on the Supreme Court's holdings in *Alexander* and *Franklin*, the Plaintiff believes the courts have interpreted these statutes to give the Plaintiff standing to sue to enforce the nondiscrimination provision of the Affordable Care Act in the instant matter.

Aside from her standing, the Defendant has also claimed in its pleading that the Plaintiff failed to demonstrate a viable cause of action based on an act of discrimination, and dismissed the central claim of the Plaintiff's complaint in a mere footnote. The gravamen of the Plaintiff's complaint is a statutory violation of the nondiscrimination provision of the Affordable Care Act, specifically discrimination based on gender identity and sex under 42 U.S.C. § 18116. There exists a prima facie violation of the Affordable Care Act's nondiscrimination provision in that when confronted about tortiously withholding the Plaintiff's medication, the Defendant simply stated that Prometrium is a "non-formulary" medication. The reason that the Defendant could not supply the Plaintiff an uninterrupted supply of her medication when entrusted to its care was

because it does not stock this medication in its emergency room pharmacy. The Plaintiff believes that it is foreseeable that transgender women will visit the Defendant's emergency department, and failing to stock a medication used specifically in this subgroup is demonstrable discriminatory conduct. The Plaintiff now seeks to amend her complaint in order that it contains injunctive relief to right that very wrong.

Some history is important to this issue, which cannot be viewed in a vacuum. Transgender rights and the equal protection of individuals despite non-normative gender identities are relatively recent issues to reach the federal courts, which are best situated to enforce federal law. Before the Affordable Care Act and newer federal guidance surrounding the appropriate standard of care for transgender individuals, the female hormone Prometrium was a flash point for equal access to medications for transgender women. For many years, this hormone was unavailable to individuals assigned male at birth through insurance policies, and its cost was prohibitively expensive when insurance failed to remit payment for its regimen. The proper medical care and insurance coverage guaranteed by the Affordable Care Act requires recipients of federal funding to comply with the law's provisions, which the Defendant has not.

The Plaintiff propounds that this insidious type of discrimination in health care that she experienced while in the care of the Defendant (specifically, that the Defendant withheld her medically-necessary hormones due to a deficiency in stock in the pharmacy based on its tortious actions) constitutes an injury in fact. Such an injury was directly and proximately caused by the Defendant's conduct. The Supreme Court held in *Heckler v. Mathews* that suffering past discrimination in receiving healthcare constitutes an injury in fact to a transgender person. "Discrimination itself, by perpetuating archaic and stereotypic notions or by stigmatizing members of the disfavored group as innately inferior and therefore as less worthy participants in the political community can cause serious non-economic injuries to those persons who are

personally denied equal treatment solely because of their membership in a disfavored group." *Heckler v. Mathews*, 465 U.S. 728, 739-740 (1984) (internal citations and quotation marks omitted).

The Plaintiff propounds that regardless of whether compensatory or punitive damages are available to plaintiffs under the Affordable Care Act, this does not change the fact that an act of discrimination occurred. In Justice Goldberg's concurrence on a decision made in respect to the Civil Rights Act of 1964, he states that Congress's anti-discrimination laws seek "the vindication of human dignity and not mere economics." *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 291 (1964). In order to vindicate her human dignity after such a horrendous denial of transition-related care (in fact, denial of personhood), the Plaintiff requests to amend her complaint to include both nominal damages and injunctive relief.

The Affordable Care Act had legislative intent to provide all Americans with coverage for all of their health care needs, including transition-related care. The Plaintiff now cites liberally from *Whitman-Walker Clinic Inc. et al. v. U.S. Department of Health and Human Services et al*[1], 2020 WL 3444030. This case arose as a challenge to Trump-era executive guidance that sought to limit the rights of transgender individuals in medical settings, attempting to upend the Affordable Care Act's protections for transgender and gender non-conforming individuals. In this case, a large number of LGBT-friendly plaintiffs sued to block the executive branch from enacting discriminatory policies against transgender individuals, a case which the court ultimately granted injunctive relief to the plaintiffs and upheld the Affordable Care Act's nondiscrimination provisions.

---

[1] The full case name is *Whitman-Walker Clinic, Inc. d/b/a Whitman-Walker Health, The Translatin Coalition, Los Angeles LGBT Center, Bradbury-Sullivan :GBT Community Center, American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ Equality, AGLP: The Association of LGBTQ Psychiatrists, Sarah Henn, Randy Pumphrey, Robert Bolan, and Ward Carpenter ℅ Steptoe and Johnson LLP v. U.S. Dept. of Health and Human Services, Alex Azar II, Roger Severino, and Seema Verma.*

4

The plaintiffs in *Whitman-Walker* expound on the following: "The administrative record documents and demonstrates that, prior to the enactment of the ACA, transgender people experienced significant discrimination from entities providing health care, even for routine medical care. HHS reported that '[f]or transgender individuals, a major barrier to receiving care is a concern over being refused medical treatment based on bias against them.' 81 Fed. Reg. 31,376, 31,460. For example, '[i]n a 2010 report, 26.7% of transgender respondents reported that they were refused needed health care. A 2011 survey revealed that 25% of transgender individuals reported being subject to harassment in medical settings.' *Id.*"

The plaintiffs continue, "The 2016 Final Rule also recognized that Section 1557 not only prohibits intentional discrimination on the basis of sex, it also prohibits conduct and practices 'that *have the effect of subjecting individuals to discrimination* on the basis of sex,' which can give rise to disparate impact claims. 81 Fed. Reg. at 31,470 (formerly codified at 45 C.F.R. § 92.101(b)(3)(ii)) (*emphasis added*)....The 'range of transition-related services' the 2016 Final Rule contemplated were 'not limited to surgical treatments and may include, but [were] not limited to, services such as hormone therapy and psychotherapy, which may occur over the lifetime of the individual.' 81 Fed. Reg. at 31,435-36." Clearly the Federal Register demonstrates the need for equitable treatment of transgender individuals surrounding access to hormonal therapies.

The Plaintiff propounds that the Defendant did not properly stock Prometrium and in fact has designated this medically-necessary drug for transgender females as non-formulary, which is a per se violation of the nondiscrimination section of the Affordable Care Act which does not require further fact pleading. The Defendant can and should have its own counterarguments (surrounding cost/availability/efficacy/use etc.) to the Plaintiff's contention, but such pleadings belong in an answer or further trial preparation. Further evidence of the precise nature of the

discriminatory act will become clear throughout the discovery process, and the Plaintiff believes she has accurately and properly pleaded facts which demonstrate a statutory breach. While the Defendant states that its actions are not discriminatory, the Defendant cannot support its position that it fails to stock this female hormone at its pharmacy, one which is disproportionately relied on by transgender women. The Defendant baldly asserts that no act of discrimination has occurred. As a transgender woman who transitioned twenty years ago in a much more hostile environment, the Plaintiff is keenly aware of acts of discrimination, and believes that a neutral third-party trier of fact in the federal judiciary is best positioned to ascertain statutory violations of federal law. As the Second Circuit has stated, "federal courts [have] a 'paramount' role in protecting federal rights." *Roach v. Morse*, 440 F.3d 53, 56 (2d. Cir. 2006), quoting *Patsy v. Bd. of Regents,* 457 U.S. 496, 503 (1982).

discriminatory act will become clear throughout the discovery process, and the Plaintiff believes she has accurately and properly pleaded facts which demonstrate a statutory breach. While the Defendant states that its actions are not discriminatory, the Defendant cannot support its position that it fails to stock this female hormone at its pharmacy, one which is disproportionately relied on by transgender women. The Defendant baldly asserts that no act of discrimination has occurred. As a transgender woman who transitioned twenty years ago in a much more hostile environment, the Plaintiff is keenly aware of acts of discrimination, and believes that a neutral third-party trier of fact in the federal judiciary is best positioned to ascertain statutory violations of federal law. As the Second Circuit has stated, "federal courts [have] a 'paramount' role in protecting federal rights." *Roach v. Morse*, 440 F.3d 53, 56 (2d. Cir. 2006), quoting *Patsy v. Bd. of Regents,* 457 U.S. 496, 503 (1982).

While the Plaintiff wasn't aware of and disagrees with the majority of the Supreme Court in its recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022) cited by the Defendant, the Plaintiff agrees that this decision is controlling and wishes to amend her complaint to add both nominal damages and injunctive relief. This case and the very matter that it addresses is seminal for the transgender community, as communities across the country restrict access to medications and medical care for transgender individuals. The Plaintiff believes that simply because punitive damage or damages for emotional harms are unavailable at this juncture, this does not significantly impact the act of discrimination that occurred at the Defendant's location. That act of discrimination occurred and the Plaintiff has suffered non-economic damages. The Plaintiff does not believe that this matter should be procedurally dismissed, but litigated so that the Second Circuit courts may weigh in on whether or not the nondiscrimination provision in the Affordable Care Act pertains to the hormone regimens of transgender Americans.

While some of her claims are time-barred, the statute of limitations on Claim I and Claim

6

II falls under the four-year catch-all statute of limitations for federal actions. A recent federal case in the Eastern District of Tennessee, *Tomei v. Parkwest Med. Ctr.*, No. 19-CV-00041 (E.D. Tenn. June 10, 2020) decided the statute of limitations on an Affordable Care Act discrimination case was four years, in line with the reasoning of the court in *Palacios v. MedStar Health, Inc.* 298 F.Supp. 3d 87 (D.D.C. 2018). Because Claim I and Claim II are not time-barred but the Defendant has taken exception to the request for compensatory damages, the Plaintiff hereby requests to amend her request for relief to read:

"Wherefore, the Plaintiff demands:

(a) nominal damages for the Defendant's per se violation of 42 U.S.C. § 18116;

(b) an injunction or Court order compelling the Defendant to stock the female hormone Prometrium in the same manner as other drugs and adding it to its formulary, and compelling the Defendant to cease its discriminatory conduct against transgender women and to offer a proper transition-related course of care for transgender individuals at its facilities including proper hormone regimens."

The Plaintiff believes that making such a change to the prayer for relief addresses the Defendant's objections to Claim I and Claim II of the Plaintiff's complaint. The Plaintiff is a pro se litigant and litigating this claim is an access to justice issue: the Plaintiff wishes to amend her complaint in lieu of having the case dismissed and then being forced to refile for nominal damages and injunctive relief. The Plaintiff prays the Court grant her latitude in her initial pleading and allow its subsequent amendment, which has absolutely no bearing on the facts of the case, which outline a clear act of discrimination. The Plaintiff is a transgender activist attempting to make case law by holding bad actors accountable in the federal judiciary, and Plaintiff prays that the Court allow the amendment to the request for relief to include both nominal damages and injunctive relief in order that it survive the motion to dismiss.

*/s/*

———————————————

Rosa Lee Klaneski, pro se Plaintiff

8 Farmington Meadow Drive

Farmington, CT 06032-2040

Cell: 860-214-4000

Email: rosaklaneski@outlook.com

## CERTIFICATE OF SERVICE

I certify that I am the Plaintiff and on this day January 19, 2023, I served a true and correct copy of the foregoing PLAINTIFF'S OBJECTION TO MOTION TO DISMISS to all parties on file:

Justin Theriault, Esq.

Jackson Lewis P.C.

90 State House Square, 8th Floor

Hartford, CT 06103