UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSA LEE KLANESKI, *Plaintiff*, <br><br> v. <br><br> BRISTOL HOSPITAL, INC., *Defendant.* | No. 3:22-cv-1158 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Rosa Lee Klaneski ("Plaintiff") has sued Bristol Hospital, Inc., asserting violations of the Patient Protection and Affordable Care Act ("Affordable Care Act"), the Federal Trade Commission Act ("FTCA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"). Compl., ECF No. 1. Ms. Klaneski, a transgender woman, alleges that Bristol Hospital failed to stock Prometrium, a medication that Ms. Klaneski takes daily as part of her hormone regimen, in its pharmacy while Ms. Klaneski was a patient at the Hospital. *Id.* at 2. She asserts that this failure constituted discrimination on the basis of gender identity or expression and on the basis of sex. *Id.* at 3–4, ¶¶ 1–13.

Bristol Hospital has filed a motion to dismiss Ms. Klaneski's Complaint. Mot. to Dismiss, ECF No. 10.

For the following reasons, Bristol Hospital's motion to dismiss is **GRANTED**. Ms. Klaneski's Affordable Care Act claims are **DISMISSED without prejudice**. Ms. Klaneski's FTCA and CUTPA claims are **DISMISSED with prejudice**.

Any Amended Complaint must be filed by **August 4, 2023**, or this action will be dismissed with prejudice.

I.         **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Allegations**

According to the Complaint, Ms. Klaneski was a patient in the Bristol Hospital emergency department on or about June 10, 2019. Compl. at 2. While at the Hospital, Ms. Klaneski allegedly requested that she be provided with her regular hormone regimen, which includes Prometrium, a brand name version of micronized progesterone. *Id.* Prometrium is allegedly a medically necessary medication that is required for Ms. Klaneski's proper functioning as a transgender woman. *Id.* at 3, ¶ 5. Hospital staff, however, allegedly explained to Ms. Klaneski that they could not provide her with Prometrium because it was non-formulary and not stocked in the Hospital's pharmacy. *Id.* at 2.

Ms. Klaneski was allegedly discharged from Bristol Hospital on June 12, 2019, two days after she was admitted. *Id.* at 3 ¶ 4.

Ms. Klaneski alleges in her Complaint that the Hospital's failure to stock Prometrium reflects discrimination on the basis of sex because progesterone is a hormone found in female bodies. *Id.* Although it does not stock Prometrium, the Hospital allegedly does stock testosterone, which Ms. Klaneski alleges is a similar hormone available for biological males. *Id.*

Ms. Klaneski also alleges that she was specifically targeted because she is an outwardly gender-nonconforming transgender woman and that she was provided with a different level of care than similarly situated cisgender individuals. *Id.* at 2–3.

Ms. Klaneski does not allege that Bristol Hospital's conduct caused her medical complications or otherwise resulted in any bodily harm or economic loss. Instead, she seeks damages for mental pain, embarrassment, humiliation, emotional pain and anguish, denial of personhood, and loss of enjoyment of life. *Id.* at 6.

### B. Procedural History

On September 14, 2022, Ms. Klaneski filed her Complaint in this case.

On January 3, 2023, Bristol Hospital filed its motion to dismiss. Mot. to Dismiss; Mem. in Supp. of Mot. to Dismiss, ECF No. 11 ("Mem.").

On January 19, 2023, Ms. Klaneski filed her opposition to Bristol Hospital's motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 13 ("Opp'n").

On February 2, 2023, Bristol Hospital filed a reply in support of its motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 14 ("Reply").

On February 13, 2023, the parties filed their Rule 26(f) report, and the Court issued a scheduling order on February 14, 2023. Report of Rule 26(f) Planning Meeting, ECF No. 15; Scheduling Order, ECF No. 16.

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a

3

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.   DISCUSSION

Bristol Hospital argues that Ms. Klaneski's gender identity and sex discrimination claims should be dismissed because she fails to allege a plausible violation of the Affordable Care Act and because she seeks emotional distress and punitive damages that cannot be recovered under

4

that statute. *See* Mem. at 5. The Hospital also argues that the remaining claims must be dismissed because the FTCA does not provide a private right of action and the CUTPA claim is time-barred. *See id.* at 10, 12.

The Court will address each of these claims in turn.

### A. The Affordable Care Act Claims

Section 1557 of the Affordable Care Act, which applies to any health program or activity that receives federal funds, prohibits discrimination on any of the grounds specified in Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1982, the Age Discrimination Act of 1975, and the Rehabilitation Act. *See* 42 U.S.C. § 18116(a). In order to enforce this guarantee of nondiscrimination, § 1557 explicitly imports "[t]he enforcement mechanisms provided for and available under" the statutes that it incorporates. *Id.*

In this case, Ms. Klaneski asserts claims for discrimination based on gender identity or expression and discrimination based on sex. Both of these grounds are covered by Title IX's prohibition of discrimination "on the basis of sex" and, therefore, also covered by the Affordable Care Act. *See Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, 57 F.4th 43, 55 (2d Cir. 2022) (noting that, in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Supreme Court "interpreted Title VII's prohibition of discrimination 'on the basis of sex' as proscribing discrimination based on one's transgender status," that "Title IX includes language identical to that in Title VII," and that the Supreme Court has "looked to its Title VII interpretations of discrimination in illuminating Title IX" (citation omitted)).

#### 1. The Relief Sought

In her Complaint, Ms. Klaneski seeks "compensatory damages for her mental pain, embarrassment, humiliation, emotional pain and anguish, denial of personhood, and loss of

5

enjoyment of life." Compl. at 6. She also seeks "punitive damages for the defendant's willful and malicious conduct." *Id.*

Neither form of damages, however, is available under the Affordable Care Act. In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Supreme Court held that particular remedies were available under Title VI and Title IX—statutes enacted under the Spending Clause that did not mention remedies—"only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." *Id.* at 187. The Court concluded that, because punitive damages are generally not available for breach of contract, funding recipients had not consented to these damages and they were not available under Title VI or Title IX. *Id.* at 187–88.

In *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), the Supreme Court extended this analysis to damages for emotional distress, holding that "such damages are not recoverable under the Spending Clause statutes we consider here." *Id.* at 1572. The Court also noted that the Affordable Care Act is subject to the limitations on damages set forth in *Barnes* and *Cummings* because the Affordable Care Act expressly incorporates the rights and remedies provided under Title VI and Title IX. *Id.* at 1569; *see also* 42 U.S.C. § 18116 ("The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of [the Affordable Care Act's nondiscrimination provision].").

Ms. Klaneski concedes that *Cummings* applies to this case and bars the relief that she seeks. *See* Opp'n at 6. She requests leave, however, to amend her Complaint to add claims for nominal damages and injunctive relief. *Id.* These types of remedies are not subject to the restriction set forth in *Cummings* and *Barnes*, and Bristol Hospital has not offered any reason why they would not be available in this case. *See* Reply at 3–4; *see also Cummings*, 142 S. Ct. at

1568 ("We have held that these statutes may be enforced through implied rights of action, and that private plaintiffs may secure injunctive or monetary relief in such suits."); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ("Because every violation [of a right] imports damage, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." (alteration in original) (internal quotation marks and citation omitted)).

Accordingly, Ms. Klaneski may amend her Complaint to seek injunctive relief and nominal damages.[1]

### 2. The Sufficiency of the Claims

The Supreme Court in *Cummings* noted that the Affordable Care Act "incorporates the rights and remedies" provided by the statutes it incorporates. *See Cummings*, 142 S. Ct. at 1569. This comment adds to "the weight of authority establish[ing] that Section 1557 incorporates the standards of Title IX for [sex- or gender-based] health discrimination claims under Section 1557." *Weinreb v. Xerox Bus. Servs.*, No. 16-cv-6823 (JGK), 2020 WL 4288376, at *3 (S.D.N.Y. July 27, 2020). As a result, the Court will analyze Ms. Klaneski's Affordable Care Act claims under the framework applicable to discrimination claims under Title IX.

"[A]lthough a private plaintiff may bring a claim under Title IX for instances of intentional discrimination, courts have held that a private right of action based on the alleged

---

[1] If Ms. Klaneski chooses to seek an injunction, she must establish that she has standing to seek this form of relief. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). "To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia,* 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (alteration in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."). Thus, to properly plead a claim for injunctive relief, Ms. Klaneski must allege facts showing that she is likely to be harmed by Bristol Hospital's alleged discrimination in the future.

disparate impact of a policy on a protected group is not cognizable under Title IX." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 363 (S.D.N.Y. 2016); *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (noting that Title VI "prohibits only intentional discrimination" and that Title IX "was patterned after Title VI" (internal quotation marks omitted)). Thus, "Title IX claims require evidence of intentional discrimination." *Doe v. N.Y. Univ.*, 438 F. Supp. 3d 172, 181 (S.D.N.Y. 2020); *see also Weinreb*, 2020 WL 4288376, at *3 ("[A] Section 1557 plaintiff cannot allege sex discrimination under a disparate impact theory, which is not permissible under Title IX, but must instead allege intentional discrimination, which is the Title IX standard.").

At the pleading stage, however, a Title IX plaintiff's burden is low. The Second Circuit held in *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), that a complaint "is sufficient with respect to the element of discriminatory intent . . . if it pleads specific facts that support a minimal plausible inference of such discrimination." *Id.* at 56.[2]

Here, Bristol Hospital argues that Ms. Klaneski should be denied leave to amend because, even if she amends her request for relief, her underlying allegations fail to state a plausible violation of the Affordable Care Act. *See* Reply at 4. The Hospital contends that it cannot be liable because it was not on notice that failing to stock progesterone in its pharmacy could constitute discrimination on the basis of gender identity or expression. *See* Mem. at 7. It also notes that Ms. Klaneski has not alleged that she did not actually receive progesterone during her treatment at the hospital but merely alleges that it was not provided on demand while she was in the emergency room on June 10, 2019. *See id.* at 7–8. Finally, the Hospital argues that Ms.

---

[2] The Second Circuit adopted this standard from the framework used for Title VII employment discrimination claims. *See Doe v. Columbia Univ.*, 831 F.3d at 55–56. *Doe* itself involved alleged discrimination based on sex in the imposition of university discipline, which is arguably more closely analogous to an adverse employment action than to a decision regarding what medication to stock in a hospital's pharmacy. Nonetheless, the Second Circuit in *Doe* framed its decision broadly: "We therefore hold that the temporary presumption [of discriminatory motivation] afforded to plaintiffs in employment discrimination cases under Title VII applies to sex discrimination plaintiffs under Title IX as well." *Id.* at 56. Thus, the Court will apply the *Doe* standard to the claims presented in this case.

Klaneski's reference to progesterone as though it is exclusively female and testosterone as though it is exclusively male is overly simplistic and should not be viewed as a plausible basis for a discrimination claim. *See id.* at 7 n.6.

The Court agrees, in part.

Even if the Court were to ignore the requests for unavailable relief, Ms. Klaneski's allegations fail to state a claim under the Affordable Care Act. To prevail on such a claim, Ms. Klaneski must plead and prove that the decision not to stock progesterone in the Hospital's pharmacy was the product of intentional discrimination based on gender identity or expression or based on sex.[3] Here, however, Ms. Klaneski has not alleged intentional discrimination. Instead, she argues merely that the failure to stock progesterone was the product of "implicit bias against transgender females." Opp'n at 1.

Furthermore, she has not alleged that the failure to stock progesterone resulted—or even could have resulted—in medical complications or significant delays in treatment. As Bristol Hospital notes, Ms. Klaneski does not allege that she was never provided with progesterone. And if the failure to stock progesterone could not substantially affect patients' treatment, this decision would not raise the "minimal plausible inference of . . . discrimination" necessary to survive a motion to dismiss. *See Doe v. Columbia Univ.*, 831 F.3d at 56.

Nonetheless, Bristol Hospital has not established that amendment would be futile. As the Court has noted, the pleading standard for Title IX discrimination claims is low, and Ms. Klaneski may be able to allege additional facts that render her claim plausible under the standard

---

[3] For claims under Title IX, the Second Circuit has "suggested that, as in a discrimination claim under Title VII, causation is demonstrated 'where gender is a motivating factor in the decision to discipline.'" *Radwan v. Manuel*, 55 F.4th 101, 131 (2d Cir. 2022) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Although the Second Circuit noted in *Radwan* that the Supreme Court has required but-for causation for other claims based on similar statutory language, the court did resolve the issue in that case. *See id.* at 131–32. This Court similarly need not reach the question of the proper causation standard at this stage.

9

set forth above. If Ms. Klaneski plausibly alleges that the Hospital's pharmacy stocking decisions were driven by intentional discrimination, the Hospital cannot complain that it lacked notice that such a decision would violate the Affordable Care Act. The Court recognizes that a wide range of legitimate factors likely contribute to a hospital's decision to stock particular medications in its pharmacy. But these issues raise factual matters that the Court should not resolve at the pleading stage. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 61 (2d Cir. 2022) ("Neither we nor the district court should resolve this fact-intensive inquiry [regarding how a consumer would perceive an allegedly false advertisement] at the pleadings stage.").

The Supreme Court has noted that the determination of whether a claim is plausible is "context specific" and that the reviewing court should draw upon its experience and common sense. *See Iqbal*, 556 U.S. 663–64. In this case, that context includes the history of barriers to healthcare that transgender individuals have faced. In promulgating regulations to enforce § 1557 of the Affordable Care Act, the Department of Health and Human Services cited a 2010 report in which "26.7% of transgender respondents reported that they were refused needed health care" and a 2011 survey which "revealed that 25% of transgender individuals reported being subject to harassment in medical settings, and 50% reported having to teach their medical providers about transgender care." Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31375, 31460 (May 18, 2016). These experiences are among the factors the Court must consider in assessing the allegations of any Amended Complaint.

Accordingly, the Court will dismiss Ms. Klaneski's Affordable Care Act claims with leave to amend.

### B. The FTCA Claim

Ms. Klaneski asserts a claim for violation of the FTCA, which prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices." 15 U.S.C. § 45(a). Courts have consistently held, however, that "the provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission." *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974). "Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions." *Id.* Thus, "no private right of action arises under that Act." *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978).

Accordingly, Ms. Klaneski's FTCA claim will be dismissed with prejudice.

### C. The CUTPA Claim

CUTPA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," does provide a private right of action. Conn. Gen. Stat. §§ 42-110b(a), 42-110g. Any such action must, however, be brought within "three years after the occurrence of a violation." *Id.* § 42-110g(f).

Bristol Hospital argues that Ms. Klaneski's CUTPA claim is time-barred because she commenced her action more than three years after the events alleged in the Complaint. *See* Mem. at 12.

Ms. Klaneski does not contest this argument and appears to concede that her CUTPA claim is untimely. *See* Opp'n at 6–7 (arguing that "[w]hile some of her claims are time-barred," the Affordable Care Act claims are not).

The Court agrees with Bristol Hospital.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if

the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) (internal quotation marks omitted).

Here, Ms. Klaneski alleges that the events underlying her CUTPA claim occurred during her time at Bristol Hospital, from June 10 to June 12, 2019. Thus, based on the face of the Complaint, Ms. Klaneski was required to bring a CUTPA claim by June 12, 2022, at the latest.

Under Connecticut law, "an action is brought, or commenced, when the writ is served upon the defendant." *Chestnut Point Realty, LLC v. Town of E. Windsor*, 324 Conn. 528, 540 (2017); *see also Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 24 (D. Conn. 2011) ("As the Court is exercising supplemental jurisdiction over Plaintiff's CFEPA claims, state law applies for purposes of determining when an action is commenced."). Here, Bristol Hospital was served on December 13, 2022, ECF No. 8, six months after the statute of limitations ran out.

Accordingly, Ms. Klaneski's CUTPA claim will be dismissed with prejudice as untimely.

**IV.      CONCLUSION**

For the foregoing reasons, Bristol Hospital's motion to dismiss is **GRANTED**. Ms. Klaneski's Affordable Care Act claims are **DISMISSED without prejudice**. Ms. Klaneski's FTCA and CUTPA claims are **DISMISSED with prejudice**.

Any Amended Complaint must be filed by **August 4, 2023**, or this action will be dismissed with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of June, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
